UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAMOFI MASTER LDC,

                        Plaintiff,

- against -

GLOBAL AXCESS CORP,

                        Defendant.

No. 07 Civ. 9317 (HB)

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT GLOBAL AXCESS CORP TO DISMISS THE COMPLAINT

Dated: New York, New York
       November 19, 2007

OF COUNSEL:

M. Duncan Grant
Eric J. Goldberg
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

Steven E. Brust
James H. Cummings
Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, FL 32202
(904) 598-6100

Kenneth J. King (KK 3567)
Suzanne M. D'Amico (SD 3581)
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue, 37th Floor
New York, NY 10018-1405
(212) 808-2700

Attorneys for Defendant Global Axcess Corp

# TABLE OF CONTENTS

Page

I. THE FACTS BEFORE THE COURT ..................................................................................1

II. ARGUMENT ........................................................................................................................4

    A. Legal and Pleading Standards .................................................................................4

    B. Plaintiff's Negligent Misrepresentation Claim Is Procedurally and Substantively Deficient ..................................................................................................................5

        1. The Martin Act Precludes Plaintiff's Negligent Misrepresentation Claim ...................................................................................6

        2. Plaintiff Fails to Plead Negligent Misrepresentation ...................................8

III. CONCLUSION ...................................................................................................................13

## TABLE OF AUTHORITIES

### CASES

Page

In re Allied Capital Corp. Sec. Litig.,
  2003 WL 1964184 (S.D.N.Y. April 25, 2003) ... 9

Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc.,
  2007 WL 2077153 (S.D.N.Y. July 20, 2007) ... 7

Bangkok Crafts Corp. v. Capitolo Di San Pietro In Vaticano,
  2007 WL 1687044 (S.D.N.Y. June 11, 2007) ... 8

Bell Atlantic Corp. v. Twombly,
  127 S. Ct. 1955 (2007) ... 4

BHC Interim Funding, L.P. v. Finantra Capital, Inc.,
  283 F. Supp. 2d 968, 978 (S.D.N.Y. 2003) ... 7

Brass v. American Film Technologies, Inc.,
  987 F.2d 142 (2d Cir. 1993) ... 5

Catton v. Defense Technology Systems, Inc.,
  2006 WL 27470 (S.D.N.Y. Jan. 3, 2006) ... 7

Cortec Industries, Inc. v. Sum Holding L.P.,
  949 F.2d 42 (2d Cir. 1991) ... 5

CPC International Inc. v. McKesson,
  70 N.Y.2d 268, 514 N.E.2d 116, 519 N.Y.S.2d 804 (1987) ... 6

Dura Pharms. Inc. v. Broudo,
  544 U.S. 336 (2005) ... 9, 11

Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.,
  343 F.3d 189 (2d Cir. 2003) ... 11

Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co.,
  373 F.3d 168 (2d Cir. 2004) ... 8

Gabriel Capital, L.P. v. Natwest Finance, Inc.,
  137 F. Supp. 2d 251 (S.D.N.Y. 2000) ... 6, 7

Ganino v. Citizens Utility Co.,
 228 F.3d 154 (2d Cir. 2000) ........................................................................................... 9

Glidepath Holding B.V. v. Spherion Corp.,
 2007 WL 2176072 (S.D.N.Y. July 26, 2007) ............................................................ 8, 9

Granite Partners, L.P. v. Bear Stearns & Co. Inc.,
 17 F. Supp. 2d 275 (S.D.N.Y. 1998) ................................................................... 5, 6, 7, 9

Leemon v. Burns,
 175 F. Supp. 2d 551, 559 (S.D.N.Y. 2001) ................................................................... 7

Lentell v. Merrill Lynch & Co.,
 396 F.3d 161 (2d Cir. 2005) ........................................................................................... 9

Maalouf v. Salomon Smith Barney, Inc.,
 2003 WL 1858153 (S.D.N.Y. April 10, 2003) ........................................................... 4, 8

Marcus v. Frome,
 329 F. Supp. 2d 464 (S.D.N.Y. 2004) ......................................................................... 6, 7

Nairobi Holdings Ltd. v. Brown Brothers Harriman & Co.,
 2002 WL 31027550 (S.D.N.Y. Sept. 10, 2002) ........................................................... 6, 7

Nanopierce Technologies, Inc. v. Southridge Capital Management LLC,
 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003) ............................................................. 6, 7

Sazerac Co. v. Falk,
 861 F. Supp. 253 (S.D.N.Y. 1994) .................................................................................. 4

Spirit Partners, L.P. v. audiohighway.com,
 2000 WL 685022 (S.D.N.Y. May 25, 2000) .................................................................. 6

## STATUTES

N.Y. Gen. Bus. Law. §§ 352 et seq. ............................................................................................ 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| CAMOFI MASTER LDC, | : | |
| Plaintiff, | : | No. 07 Civ. 9317 (HB) |
| - against - | : | |
| GLOBAL AXCESS CORP, | : | MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT GLOBAL AXCESS CORP TO DISMISS THE COMPLAINT |
| Defendant. | : | |

---

Defendant Global Axcess Corp submits this memorandum of law in support of its Motion to Dismiss the Complaint filed by plaintiff CAMOFI Master LDC ("CAMOFI"). The Complaint asserts a single claim of negligent misrepresentation that is predicated on one securities transaction between CAMOFI and Global. Courts in this District have seen claims of this type on numerous occasions, and they have consistently dismissed them on the ground that they are preempted by New York's Martin Act. The current claim should likewise be dismissed for that reason. Moreover, CAMOFI has not adequately pleaded three of the five elements of a negligent misrepresentation claim, and the Complaint should be dismissed for that additional reason.

I.   **THE FACTS BEFORE THE COURT**

The facts that are now before this Court on Global's motion to dismiss, as pleaded in the Complaint (King Aff., Exh. A) and as set forth in Securities and Exchange Commission ("SEC") filings and other documents on which the Complaint relies, are the following. Global filed Forms 10-QSB with the SEC for the second and third quarters of 2005 (the quarters ended on June 30 and September 30, 2005), and each filing showed that the quarter had been profitable (Compl. ¶ 7). CAMOFI pleads that in reliance on the two Forms 10-QSB, as well as on oral

representations by Global officers that Global had positive net income and a positive overall financial situation, CAMOFI entered into a Securities Purchase Agreement with Global dated October 27, 2005 (the "SPA," see Compl. Exh. A) (Compl. ¶¶ 9-10, 25). Pursuant to the SPA, CAMOFI lent Global $3,500,000 for a term of five years as part of a convertible debt placement in Global (id. ¶¶ 9-10).

Although not pleaded by CAMOFI, Global's SEC filings and the SPA show that CAMOFI could not have relied on Global's third quarter Form 10-QSB, because it had not yet been filed with the SEC when CAMOFI and Global entered into the SPA. The 10-QSB for that quarter was filed on November 14, 2005 (see King Aff., Exh. B), whereas the SPA had been executed 2½ weeks earlier, on October 27, 2005 (see Compl. ¶ 10 and Exh. A). Moreover, with respect to the alleged oral representations by Global officers (Compl. ¶ 25), the SPA contains a standard merger and integration clause, making any such alleged oral misrepresentations inconsequential (SPA § 5.3).

The SPA includes a representation by Global that it had filed all required SEC reports for the two years preceding the date of the SPA, and that as of the dates of their filing, such reports "complied in all material respects with the requirements of the Securities Act and the Exchange Act" and did not "contai[n] any untrue statement of a material fact or omi[t] to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading" (Compl. ¶ 10; SPA § 3.1(h)). As shown immediately above, such SEC filings did not include the Form 10-QSB for the third quarter of 2005, because it had not yet been filed as of the date of execution of the SPA. Global further represented in the SPA that its financial statements "comply in all material respects with applicable accounting requirements and the rules and regulations of the

[SEC] with respect thereto as in effect at the time of filing," had been prepared in accordance with GAAP, and fairly represented Global's financial position (id.).

In consideration for CAMOFI's $3.5 million debt placement, Global executed a promissory note in favor of CAMOFI at 9% interest per annum (the "Note") (SPA Exh. A). The Note is convertible, at CAMOFI's option, into Global common stock at the price of $1.45 per share (Compl. ¶ 13; Note § 4). As further consideration for the CAMOFI investment, Global issued CAMOFI a warrant to purchase 910,000 shares of Global common stock at an exercise price of $1.75 per share (the "Warrant") (SPA Exh. B) (Compl. ¶ 14; Warrant § 2(b)).

On March 31, 2006, some five months after the parties had entered into the SPA, Global filed a Form 8-K with the SEC in which it disclosed that its Forms 10-QSB for the second and third quarters of 2005 had contained errors (Compl. ¶ 16). The Form 8-K stated that the correction to the errors in the Form 10-QSB for the second quarter of 2005 would reduce the previously stated net income of $295,911 to a net loss of $42,084 (id. ¶ 17). CAMOFI generically pleads that at some unidentified point in time, "Global knew or should have known its net income for the quarters ended June 30, 2005 and September 30, 2005 was actually a loss" (Compl. ¶ 27).

As for the alleged impact of Global's disclosure of its accounting errors in its March 31, 2006 Form 8-K, CAMOFI asserts that on the previous day, March 30, 2006, Global's stock was trading at $0.98 per share (id. ¶ 19). On March 31, the day that the 8-K was filed, the price of Global stock closed at $0.76 (id. ¶ 20). CAMOFI does not allege the time on March 31 when the 8-K was filed with the SEC, so it is not possible to determine from the Complaint whether the price of Global stock on March 31 was affected by the filing of the 8-K. CAMOFI further alleges that since the end of the June 30, 2005 quarter, Global has operated at a loss, and

that shortly before CAMOFI filed this action, Global's shares were trading at $0.27 per share (id. ¶ 22).

Based on those averments, CAMOFI asserts a claim of negligent misrepresentation against Global (id. ¶¶ 24-32). That claim is preempted by New York's Martin Act, however, and it therefore must be dismissed. The Complaint is also deficient on the ground that it fails to plead three of the elements of a claim for negligent misrepresentation.

## II.  ARGUMENT

### A.  Legal and Pleading Standards

The standards under Rule 12(b)(6) are well known to the Court. The material allegations composing the factual predicate of the action will be accepted as true, unless they are inconsistent with documents attached to the complaint or other matters that the Court may consider on a motion to dismiss. Sazerac Co. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (in context of motion to dismiss, "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."). Under the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, 1974 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level," and a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Furthermore, Rule 9(b) requires CAMOFI to plead with particularity how Global's statements were false or misleading when made. Maalouf v. Salomon Smith Barney, Inc., 2003 WL 1858153, at *4 (S.D.N.Y. April 10, 2003).

Consideration of a Rule 12(b)(6) motion is not limited solely to the factual allegations in the complaint, because the Court may also give weight at this stage "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff

had knowledge and relied on in bringing suit." Granite Partners, L.P. v. Bear Stearns & Co. Inc., 17 F. Supp. 2d 275, 285 (S.D.N.Y. 1998) (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)). Additionally, public disclosure documents, such as those filed with the SEC, may be reviewed on a motion to dismiss. Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

### B. Plaintiff's Negligent Misrepresentation Claim Is Procedurally and Substantively Deficient

CAMOFI's lawsuit arises in connection with the SPA, Note, and Warrant, all of which contain New York choice of law provisions (see Compl. ¶ 10, Ex. A. § 5.9, Ex. C § (e), Ex. D § 5(f); see also Compl. ¶ 4 (plaintiff implicitly relies upon the same sections in the SPA, Note, and Warrant to aver jurisdiction and venue in this Court)). Accordingly, CAMOFI's negligent misrepresentation claim is governed by New York law.

Under New York law, the Complaint is both procedurally and substantively deficient. As a procedural matter, a private party may not make a claim for negligent misrepresentation in the purchase or sale of securities, such as CAMOFI attempts to do here, because such claims are preempted by the Martin Act. In addition, the Complaint fails to plead three of the elements of negligent representation, so it must be dismissed on that separate ground as well.

### 1. The Martin Act Precludes Plaintiff's Negligent Misrepresentation Claim

The Martin Act is New York's blue sky law. N.Y. GEN. BUS. LAW §§ 352 et seq. "The Martin Act provides that the attorney general shall regulate and enforce New York's securities laws. Accordingly, it is well established that *there exists no private right of action for claims that are within the purview of the Act*." Marcus v. Frome, 329 F. Supp. 2d 464, 475-76 (S.D.N.Y. 2004) (quoting Spirit Partners, L.P. v. audiohighway.com, 2000 WL 685022, at *6 (S.D.N.Y. May 25, 2000) (emphasis supplied)); see also Nairobi Holdings Ltd. v. Brown Brothers Harriman & Co., 2002 WL 31027550, at *10 (S.D.N.Y. Sept. 10, 2002); Gabriel Capital, L.P. v. Natwest Finance, Inc., 137 F. Supp. 2d 251, 266 (S.D.N.Y. 2000); Granite Partners, 17 F. Supp. 2d at 291.

"Thus, courts have dismissed state law claims covered by the Martin Act on the grounds that permitting them to proceed would be equivalent to permitting a private claim under the Act." Marcus, 329 F. Supp. 2d at 475-76. Another Southern District opinion elaborated on the rationale underlying Martin Act preemption:

> [A]llowing private litigants to press common law claims "covered" by the Martin Act would upset the Attorney General's exclusive enforcement power in exactly the same way that it would upset the exclusive enforcement power to allow private claims pleaded under the Martin Act itself.

Nanopierce Technologies, Inc. v. Southridge Capital Management LLC, 2003 WL 22052894, at *2 (S.D.N.Y. Sept. 2, 2003).

The Martin Act prohibits various fraudulent and deceitful practices in the distribution, exchange, sale, and purchase of securities, but it does not require proof of scienter or intent to defraud. See CPC Int'l Inc. v. McKesson, 70 N.Y.2d 268, 276, 514 N.E.2d 116, 118, 519 N.Y.S.2d 804, 807 (1987). Similarly, a claim for negligent misrepresentation does not

require a plaintiff to plead or prove intentional deceit. Thus, claims for negligent misrepresentation that are predicated on the purchase or sale of securities come within the purview of the Martin Act, and they may not be asserted by private litigants. See Nairobi Holdings, 2002 WL 31027550, at *10; Granite Partners, 17 F. Supp. 2d at 291-92; see also Marcus, 329 F. Supp. 2d at 476 ("Courts have routinely found common law negligent misrepresentation claims precluded by the Martin Act."); Nanopierce, 2003 WL 22052894, at *2-3.

Courts applying New York law therefore consistently dismiss claims for negligent misrepresentation when such claims involve the purchase or sale of securities. See, e.g., Catton v. Defense Technology Systems, Inc., 2006 WL 27470, at *10 (S.D.N.Y. Jan. 3, 2006); Marcus, 329 F. Supp. 2d at 476; Nairobi Holdings, 2002 WL 31027550, at *10; Gabriel Capital, 137 F. Supp. 2d at 266; Granite Partners, 17 F. Supp. 2d at 292.

CAMOFI's sole claim – negligent misrepresentation – arises from its purchase of securities from Global. The securities at issue are the convertible Note and the Warrant that CAMOFI acquired pursuant to its investment in Global under the SPA. Convertible notes are securities. Leemon v. Burns, 175 F. Supp. 2d 551, 559 (S.D.N.Y. 2001) ("The fact that the Note's original principal could be converted into AMDL common stock is a strong factor for holding that the Note is a security. Accordingly, for purposes of the motion to dismiss, the Note is a security within the meaning of the 1934 Act."); see generally Alexandra Global Master Fund, Ltd. v. Ikon Office Solutions, Inc., 2007 WL 2077153 (S.D.N.Y. July 20, 2007) (Rule 10b-5 case regarding purchase and sale of convertible notes). Warrants are also securities. BHC Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp. 2d 968, 978 (S.D.N.Y. 2003) ("The Loan Agreement between BHC and Finantra provided that BHC would receive warrants to

purchase common stock of both Travelers and Finantra. Such a warrant is included in the definition of 'security' in 15 U.S.C. § 78c(a)(10).").

Because CAMOFI's common law claim for negligent misrepresentation arises from its purchase of securities from Global, it is preempted by the Martin Act. The Complaint must therefore be dismissed.

### 2. Plaintiff Fails to Plead Negligent Misrepresentation

Given preemption by the Martin Act, the Court should not reach the content of CAMOFI's pleading of its negligent misrepresentation claim. If it does, however, then under New York law, CAMOFI must plead five elements to support its claim against Global for negligent misrepresentation, see Bangkok Crafts Corp. v. Capitolo Di San Pietro In Vaticano, 2007 WL 1687044, at *6 (S.D.N.Y. June 11, 2007):

- (1) Global had a duty, as a result of a special relationship, to provide correct information.

- (2) Global made a false representation that it should have known was incorrect. Element (2) must be pleaded with particularity under Rule 9(b). See Maalouf, 2003 WL 1858153, at *4.

- (3) the information supplied in the representation was known by Global to be desired by CAMOFI for a serious purpose.

- (4) CAMOFI intended to rely and act upon it.

- (5) CAMOFI reasonably relied on the information to its detriment. Element (5) is another way of saying that CAMOFI must plead loss causation in order to survive a motion to dismiss. See Glidepath Holding B.V. v. Spherion Corp., 2007 WL 2176072, at *15 (S.D.N.Y. July 26, 2007) ("loss causation is an essential element" of a negligent misrepresentation claim).

For purposes of its motion to dismiss, Global will not challenge CAMOFI's pleading of elements (3) and (4). However, for the following reasons, CAMOFI has not adequately pleaded elements (1), (2), and (5).

-8-

Element (1) is the existence of a special relationship that required Global to give materially accurate information to CAMOFI. Because the Complaint, on its face, does not allege any special relationship between the parties as required by element (1), it should be dismissed. See Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co., 373 F.3d 168, 188 (2d Cir. 2004); Bangkok Crafts, 2007 WL 1687044 at *7 (dismissing negligent misrepresentation claim because no special relationship was alleged).

CAMOFI does not satisfy element (2), either, because it merely alleges in a conclusory fashion that "Global knew or should have known its net income for the quarters ended June 30, 2005 and September 30, 2005 was actually a loss" (Compl. ¶ 27). That assertion falls short of the Rule 9(b) pleading standard, most critically because it does not allege when Global knew that the net income it had reported for those two quarters was actually a loss. If Global did not learn until shortly before it issued its corrective Form 8-K in March 2006 that it had losses in the second and third quarters of 2005, it had not been negligent in making representations about its net income in October 2005. Nor does the Complaint either offer any other detail about what Global knew or place Global on notice of how it allegedly knew or should have known that either Form 10-QSB was incorrect at the time it was filed with the SEC. "Rule 9(b)'s particularity requirement demands that the complaint contain specific factual allegations demonstrating that a statement was false or misleading when made." Maalouf, 2003 WL 1858153, at *4.

Nor has CAMOFI pleaded element (5), loss causation, which is the same as the requirement that CAMOFI plead that it reasonably and detrimentally relied on a misrepresentation by Global. Loss causation is the causal link between the alleged misconduct and the economic harm allegedly suffered by the plaintiff. Glidepath, 2007 WL 2176072, at *15.

"In other words, loss causation is causation in the traditional 'proximate cause' sense – the allegedly unlawful conduct caused the economic harm" (id.). In order to plead loss causation, CAMOFI must allege that it sustained a loss that was proximately caused by the correction of a prior misrepresentation (see id. at *16). See also Dura Pharms. Inc. v. Broudo, 544 U.S. 336, 342-43 (2005) (loss causation requirement in context of Rule 10b-5 claim); Lentell v. Merrill Lynch & Co., 396 F.3d 161, 168 (2d Cir. 2005) (same; requiring that the prior misstatement artificially inflate the price of the securities and that the subsequent disclosure correct the earlier misstatement).

CAMOFI has not pleaded loss causation for the simple reason that it has failed to allege a loss. The obvious explanation for this failure is that it has not incurred any loss. More specifically, CAMOFI acquired the Note and Warrant pursuant to the SPA on October 27, 2005. The Note was convertible into Global shares at conversion price of $1.45, and the exercise price under the Warrant was $1.75 (Compl. ¶¶ 10, 13-14). On October 27, 2005, the execution date of the SPA, Global's stock closed at $1.37. See LexisNexis Report (King Aff., Exh. C). The Court may consider the prices of publicly traded securities on a motion to dismiss. Ganino v. Citizens Util. Co., 228 F.3d 154, 167 n.8 (2d Cir. 2000) ("The New York Stock Exchange data mentioned in the opinion below were not attached to the Complaint as an exhibit or incorporated by reference into the Complaint. Nevertheless, the district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment."); In re Allied Capital Corp. Sec. Litig., 2003 WL 1964184, at *3 (S.D.N.Y. Apr. 25, 2003) ("In addition to facts alleged in the complaint, the Court may take judicial notice of . . . 'well-publicized stock prices.'").

Thus, CAMOFI's Note and Warrant were not in the money when the parties entered into the SPA. In fact, from the date of the SPA through the filing of the Complaint, the highest closing price for Global's stock was $1.46, and that price was reached only on a single day, November 3, 2005, just one week after the parties entered into the SPA. See LexisNexis Report (King Aff., Exh. C). Given that the Warrant was never in the money, and that the Note was in the money for only one day in the amount of $0.01, it would not have made any sense for CAMOFI to convert the Note into common stock or to exercise its right to purchase stock under the Warrant. It therefore has not suffered any economic loss.

CAMOFI also fails to plead loss causation because it has not alleged a causal connection between the errors disclosed in Global's March 31, 2006 Form 8-K and CAMOFI's purported "damages" (see Compl. ¶ 32). Instead, it pleads that the price of Global's shares dropped from $0.98 the day before the Form 8-K was filed to $0.76 the day it was filed (see Compl. ¶¶ 19-20). Both of those prices are well below the $1.45 conversion price for converting the Note into common stock and the $1.75 exercise price for the Warrant shares. As a result, CAMOFI was not in the money either before or after the 8-K corrected any prior misstatements, including those in the Form 10-QSB for the second quarter of 2005 (the third quarter 10-QSB had not yet been issued when CAMOFI invested in Global). CAMOFI has not suffered loss as a result of any prior misstatements.

CAMOFI's further allegations regarding the $0.27 share price "shortly before the filing of this Complaint" (Compl. ¶ 22) only punctuate its failure to plead loss causation. Since CAMOFI remains out of the money, it has not suffered any loss as a result of the errors in the 2005 financial statements. See Dura, 544 U.S. at 341. Even before the Supreme Court issued the Dura decision in 2005, the Second Circuit had explained that pleading the disparity between

-11-

the stock price at the time of purchase and the price following a disclosure of corrective information is not enough by itself to establish loss causation:

> Plaintiff's allegation of a purchase-time value disparity, standing alone, cannot satisfy the loss causation pleading requirement. By claiming that it incorrectly appraised the value of NETV securities and purchased them at an inflated price, Emergent simply asserts that, had it known about Panzo's investment history and about NETV's ties to Appel, it would not have agreed to buy NETV's stock at the offering price. Hence, its "investment quality" allegation amounts to nothing more than a paraphrased allegation of transaction causation. While it may explain why plaintiff purchased the NETV's stock, it does not explain why it lost money on the purchase, the very question that the loss causation allegation must answer.

<u>Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.</u>, 343 F.3d 189, 198 (2d Cir. 2003). Under applicable standards, CAMOFI has not pleaded loss causation.

Thus, CAMOFI has failed to plead elements (1), (2), and (5) of its claim for negligent misrepresentation. Even if the Court reached the content of the pleadings, the Complaint should be dismissed.

-13-

## III.  CONCLUSION

For the reasons set forth above, CAMOFI's claim is fully preempted by the Martin Act. In addition, it has not adequately pleaded three of the five elements of a negligent misrepresentation claim. Defendant Global Axcess Corp therefore requests that the Court grant its Motion to Dismiss the Complaint for failure to state claims upon which relief may be granted.

Dated: New York, New York
           November 19, 2007

Respectfully submitted,

/s/ Kenneth J. King
Kenneth J. King (KK 3567)
Suzanne M. D'Amico (SD 3581)
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue, 37th Floor
New York, NY  10018-1405
(212) 808-2700

OF COUNSEL:

M. Duncan Grant
Eric J. Goldberg
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Steven E. Brust
James H. Cummings
Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, FL  32202
(904) 598-6100

Attorneys for Defendant Global Axcess Corp

9043108