UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| CAMOFI MASTER LDC, | : | |
| | : | |
| Plaintiff, | : | No. 07 Civ. 9317 (HB) |
| | : | |
| - against - | : | |
| | : | |
| GLOBAL AXCESS CORP, | : | |
| | : | **DEFENDANT GLOBAL AXCESS** |
| | : | **CORP'S ANSWER AND** |
| | : | **COUNTERCLAIM** |
| Defendant. | : | |

---

Global Axcess Corp ("Global") hereby answers the Amended Complaint and asserts a Counterclaim against CAMOFI Master LDC ("CAMOFI").

## ANSWER TO AMENDED COMPLAINT

Defendant Global hereby answers the Amended Complaint ("Complaint") filed by plaintiff CAMOFI. All averments of the Complaint not specifically admitted below are denied. In response to the averments contained in the Complaint, Global states the following:

1.      The averments of paragraph 1 are CAMOFI's characterization of the nature of its claim, and as such do not require a response, except that Global denies that it is liable to CAMOFI and denies that it owes CAMOFI damages or interest.

2.      Global is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 2.

3.      Global admits that it is a Nevada corporation. It denies that its principal place of business is located at 224 Ponte Vedra Park Drive, Ponte Vedra Beach, Florida 32082, because it has changed its principal place of business to 7800 Belfort Parkway, Suite 165, Jacksonville, Florida 32256.

4.     The averments of paragraph 4 constitute a legal conclusion to which no response is required.  To the extent that paragraph 4 contains averments of fact, they are denied.  However, Global does not intend to contest personal jurisdiction over it in this Court in this action.

5.     The averments of paragraph 5 constitute a legal conclusion to which no response is required.  However, Global does not intend to contest the Court's subject matter jurisdiction over this action.

6.     The averments of paragraph 6 constitute a legal conclusion to which no response is required.  However, Global does not intend to contest venue in this Court in this action.

7.     Admitted.

8.     Admitted, except that Global denies that it filed financial statements with the SEC for the second quarter of 2005 "[i]n addition" to the Form 10-QSB that it filed with the SEC on August 10, 2005, because such financial statements were a part of such Form 10-QSB.

9.     Admitted.

10.    Global admits the averments of paragraphs 10(a) and 10(b), but because of a change in management since the autumn of 2005, it is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 10(c).

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.     Admitted.

17.     Admitted.

18.     Global repeats and realleges every response contained above as if fully set forth herein.

19.     The averments of paragraph 19 constitute a legal conclusion to which no response is required, except that Global admits that CAMOFI paid Global the sum of $3,500,000 and that Global accepted that amount from CAMOFI.

20.     The averments of paragraph 20 constitute a legal conclusion to which no response is required.  Global denies any averments in paragraph 20 that purport to interpret, construe, or characterize the Note.

21.     The averments of paragraph 21 constitute a legal conclusion to which no response is required.  Global denies any averments in paragraph 21 that purport to interpret, construe, or characterize the Note or the Securities Purchase Agreement.

22.     Global denies each and every averment of paragraph 22, except it admits only the averment that section 3.1(h) of the SPA contained the representations and warranties that are summarized (but not quoted) in subparagraphs 22(a) and 22(b).

23.     Admitted.

24.     Admitted.

25.     The averments of paragraph 25 constitute a legal conclusion to which no response is required.

26.     The averments of paragraph 26 constitute a legal conclusion to which no response is required.

27.    The averments of paragraph 27 constitute a legal conclusion to which no response is required.

28.    The averments of paragraph 28 constitute a legal conclusion to which no response is required.

29.    The averments of paragraph 29 constitute a legal conclusion to which no response is required.

30.    The averments of paragraph 30 constitute a legal conclusion to which no response is required.

31.    The averments of paragraph 31 constitute a legal conclusion to which no response is required.

32.    The averments of paragraph 32 constitute a legal conclusion to which no response is required.

33.    The averments of paragraph 33 constitute a legal conclusion to which no response is required.

34.    The averments of paragraph 34 constitute a legal conclusion to which no response is required, except that Global admits that CAMOFI has declared the Note to be in default.

35.    Global denies each and every averment of paragraph 35.

<u>FIRST AFFIRMATIVE DEFENSE</u>

CAMOFI has failed to state a claim upon which relief may be granted.

<u>SECOND AFFIRMATIVE DEFENSE</u>

CAMOFI's claim for breach of contract is barred by the failure of a condition precedent to occur under section 5 of the Subordination Agreement that is dated on or about October 27, 2005 by and among Wachovia Bank N.A., CAMOFI, and Global.  A copy of the

Subordination Agreement is attached as Exhibit A. The Subordination Agreement was entered into as a part of the overall transaction reflected in the 9% Senior Subordinated Secured Convertible Note ("Note") and in the Securities Purchase Agreement. Section 5 of the Subordination Agreement provides that CAMOFI may not file suit against Global alleging breach of the Note or breach of the Securities Purchase Agreement until at least one of the five conditions precedent specified in Section 5 has occurred. None of the five conditions has occurred. The fourth stated condition is that "at least one hundred and eighty (180) days shall have elapsed after [Wachovia Bank N.A.]'s receipt of a written notice from [CAMOFI] stating that [CAMOFI] intends to commence an action against [Global] . . . by reason of a [default or event of default]" under the Note or Securities Purchase Agreement. CAMOFI has not given any such notice to Wachovia Bank N.A. Because neither that fourth condition precedent nor any of the other four conditions precedent has been satisfied, CAMOFI was not permitted to file this action against Global when it did, meaning that the action was filed prematurely, and the action should be dismissed on that ground.

## THIRD AFFIRMATIVE DEFENSE

When Global's outside auditors advised it in or about February 2006 that they were changing their prior position and requiring Global to revise its accounting treatment with respect to booking revenue due to Global under certain of its processing contracts, capitalizing software acquisition costs, and depreciation expense, and when Global subsequently filed a Form 8-K with the SEC on March 30, 2006 announcing that it had made such changes in its financial statements, Global was ready and willing to return 100% of the principal amount of CAMOFI's investment to it. However, CAMOFI elected to continue receiving monthly payments from Global (including 9% interest), all of which Global has timely made and all of which CAMOFI has accepted. CAMOFI further elected not to declare a default or to seek to accelerate the debt

evidenced by the Note until December 2007, some 21 months after Global filed such Form 8-K

with the SEC. Having accepted the benefits of the SPA and the Note during that 21-month

period, CAMOFI now seeks to double dip by pursuing acceleration of the debt reflected by the

Note, 110% of the principal amount due under the Note, and accrued and unpaid interest at the

default interest rate of 20%. Yet for the reasons set forth in Global's Counterclaim, it would

have been clear to any reasonable party, no later than the date when Global filed the Form 8-K,

that the SPA, the Note, and the transaction that they reflect should have been rescinded. Thus,

CAMOFI seeks through this action to obtain a windfall to which it is not entitled. For those

reasons, CAMOFI's claims are barred in whole or in part by the doctrine of waiver.

### FOURTH AFFIRMATIVE DEFENSE

For the reasons set forth in the Third Affirmative Defense, CAMOFI's claims are

barred in whole or in part by the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE

For the reasons set forth in the Third Affirmative Defense, CAMOFI's claims are

barred in whole or in part by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

For the reasons set forth in the Third Affirmative Defense, CAMOFI's claims are

barred in whole or in part by the doctrine of unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

For the reasons set forth in the Third Affirmative Defense, CAMOFI's claims are

barred in whole or in part by the doctrine of ratification.

### EIGHTH AFFIRMATIVE DEFENSE

For the reasons set forth in the Third Affirmative Defense, CAMOFI's claims are

barred in whole or in part by its breach of the implied covenant of good faith and fair dealing.

## NINTH AFFIRMATIVE DEFENSE

CAMOFI's claims are barred because any damages allegedly incurred by CAMOFI are the proximate result of actions or omissions of parties over which Global had no control.

## TENTH AFFIRMATIVE DEFENSE

For the reasons set forth in Global's Counterclaim, CAMOFI's claims are barred because the parties were operating under a material and substantial mutual mistake at the time that they entered into the SPA, the Note, and the transaction reflected in the SPA and the Note.

## ELEVENTH AFFIRMATIVE DEFENSE

CAMOFI's claims are barred because CAMOFI has suffered no damages as a direct or proximate result of Global's alleged actions or inactions.

## RESERVATION OF DEFENSES

Additional facts may be revealed through the discovery process that support additional affirmative defenses that are currently unknown to Global. Therefore, Global reserves the right to assert additional affirmative defenses in the event that discovery (or its own investigation) supports the pleading of additional affirmative defenses.

WHEREFORE, defendant Global Axcess Corp requests that the Amended Complaint be dismissed with prejudice, that judgment be entered in favor of Global Axcess Corp and against CAMOFI Master LDC, and that Global Axcess Corp be awarded the costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court may deem appropriate.

## **COUNTERCLAIM**

Counterclaim plaintiff Global Axcess Corp files this Counterclaim against counterclaim defendant CAMOFI Master LDC and alleges the following:

## PARTIES

1.     Counterclaim plaintiff Global Axcess Corp ("Global") is a Nevada corporation with its principal place of business located at 7800 Belfort Parkway, Suite 165, Jacksonville, Florida  32256.

2.     Upon information and belief, counterclaim defendant CAMOFI Master LDC ("CAMOFI") is a limited duration company organized under the laws of the Cayman Islands, with its principal place of business located in the Cayman Islands.

## JURISDICTION AND VENUE

3.     Jurisdiction is proper under 28 U.S.C. § 1332(a)(2), because the Counterclaim is between a citizen of a State and a citizen of a foreign country, and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

4.     In addition, the Court has jurisdiction over the Counterclaim because it is a compulsory counterclaim under Rule 13(a)(1) of the Federal Rules of Civil Procedure, in that it arises out of the same transaction that is the subject of CAMOFI's claim against Global and it does not require the addition of any parties over whom the Court cannot acquire jurisdiction.

5.     Venue is proper in this District because CAMOFI agreed, pursuant to section 5.9 of the Securities Purchase Agreement ("SPA"), that venue is proper in this District for all federal court actions related to the "construction, validity, enforcement and interpretation" of the SPA.

## THE UNDERLYING TRANSACTION

6.     On or about October 27, 2005, CAMOFI and Global entered into the SPA and the 9% Senior Subordinated and Secured Promissory Note (the "Note").

7.     Although the SPA and Note have numerous provisions, the essential exchange that they reflect was the following:

a.    CAMOFI lent Global $3.5 million.

b.    Global gave CAMOFI a security interest in certain Global assets, and it executed the Note and delivered it to CAMOFI.

c.    The Note provided for repayment on or before October 17, 2010, and for 9% interest on the unpaid principal amount. Subject to certain limitations, CAMOFI had the right to convert the Note into Global common stock at a conversion price of $1.45 per share, subject to certain adjustments (Note §4). If Global sold additional common stock, while the Note was still in effect, at a price lower than the adjusted conversion price, the conversion price would be reduced to that lower price and the number of shares into which CAMOFI could convert the Note would be increased proportionately (Note §5(b)). As long as any indebtedness under the Note was outstanding, Global could not incur additional debt (other than debt to Wachovia Bank, N.A., Global's secured lender) unless such additional debt was made subordinate to the debt that Global owed to CAMOFI (Note §7(a)).

d.    CAMOFI received warrants to purchase 910,000 shares of Global's common stock at an exercise price of $1.75 per share (SPA §2.2(a)(iii)). If Global engaged in a debt or equity financing during the term of the Note, CAMOFI would have the right to participate in such financing (SPA §4.16).

GLOBAL'S MISTAKE OF FACT

8.    Before and at the time that CAMOFI and Global entered into the SPA and the Note, Global believed that the accounting advice that its outside auditors (the "Auditors") provided to it for purposes of the preparation of Global's financial statements was completely proper and correct.

9.    In particular, Global believed that the position that the Auditors took was completely proper and correct with respect to booking revenue due to Global under certain of its

processing contracts, capitalizing software acquisition costs, and depreciation expense. The position that the Auditors took with respect to those three matters was material to Global's determination how to treat them in its financial statements.

10.     Before and at the time that CAMOFI and Global entered into the SPA and the Note, Global relied upon the accounting advice that the Auditors provided to it for purposes of the preparation of Global's quarterly and annual financial statements.

11.     In particular, Global relied upon the position that the Auditors took with respect to booking revenue due to it under certain of its processing contracts; capitalizing software acquisition costs; and depreciation expense.

12.     In reasonable reliance upon the Auditors' advice and in the belief that such advice was correct, Global included in the Form 10-QSB that it filed with the SEC on August 10, 2005 (for the quarter ending June 30, 2005) financial statements that set forth information that was consistent with the Auditors' advice and that Global believed were in conformance with Generally Accepted Accounting Principles applied on a consistent basis.

13.     In reasonable reliance upon the accounting advice that the Auditors provided to it, Global issued its financial statements for the second quarter of 2005 (which were included in the Form 10-QSB that it filed with the SEC on August 10, 2005), which presented its financial condition in accordance with such advice. In particular, in the Form 10-QSB, Global relied upon and adhered to the position that the Auditors had taken with respect to booking revenue due to Global under certain of its processing contracts, capitalizing software acquisition costs, and depreciation expense.

14.    In reasonable reliance upon the Auditors' advice and in the belief that such advice was correct, Global made certain representations to CAMOFI in the SPA with respect to Global's financial statements. *See* SPA §3.1(h). Such representations included the following:

a.    Global had filed with the SEC all reports that the Securities Act or the Securities Exchange Act required it to file "for the two years preceding the date" of the SPA.

b.    Such reports filed with the SEC "complied in all material respects with the requirements of the Securities Act and that Exchange Act and the rules and regulations of the [SEC] promulgated thereunder . . . ."

c.    No such reports filed with the SEC, "when filed, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary  in order to make the statements therein, in light of the circumstances under which they were made, not misleading."

d.    Global's financial statements "comply in all material respects with applicable accounting requirements and the rules and regulations of the [SEC] with respect thereto as in effect at the time of filing."

e.    Global's financial statements "have been prepared in accordance with United States generally accepted accounting principles applied on a consistent basis during the periods involved ('GAAP'), except as may be otherwise specified in such financial statements or the notes thereto and except that unaudited financial statements may not contain all footnotes required by GAAP . . . ."

f.    Global's financial statements "fairly present in all material respects the financial position of [Global] and its consolidated subsidiaries and the results of operations

and cash flows for the periods then ended, subject, in the case of unaudited statements, to normal, immaterial, year-end audit adjustments."

15.    Because of its reasonable reliance upon the position that the Auditors had taken on Global's accounting, Global believed that all such representations that it made to CAMOFI in the SPA were true and correct when made.

16.    Based upon the position that the Auditors had taken on Global's accounting through the date of execution of the SPA and the Note, all such representations that Global made to CAMOFI in the SPA were in fact true and correct when made.

17.    Before and at the time that CAMOFI and Global entered into the SPA and the Note and Global made such representations to CAMOFI, Global reasonably believed as a fact that the Auditors would not change the position that they had taken on Global's accounting, upon which Global had reasonably relied in issuing its financial statements for the second quarter of 2005, including the Auditors' position with respect to booking revenue due to Global under certain of its processing contracts, capitalizing software acquisition costs, and depreciation expense.

<u>CAMOFI'S MISTAKE OF FACT</u>

18.    Before and at the time that CAMOFI and Global entered into the SPA and the Note, CAMOFI, as part of its due diligence and of its review of Global's SEC filings and financial statements, believed that the accounting advice that the Auditors provided to Global for purposes of the preparation of Global's quarterly and annual financial statements was completely proper and correct.

19.    In particular, CAMOFI believed that the position that the Auditors took was completely proper and correct with respect to Global's booking revenue due to Global under

certain of its processing contracts; capitalizing Global's software acquisition costs; and Global's depreciation expense.

20.    Before and at the time that CAMOFI and Global entered into the SPA and the Note, as part of its due diligence and of its review of Global's SEC filings and financial statements, CAMOFI reasonably relied upon the accounting advice that the Auditors provided to Global for purposes of the preparation of Global's quarterly and annual financial statements.

21.    In particular, CAMOFI reasonably relied upon the position that the Auditors took with respect to Global's booking of revenue due to Global under certain of its processing contracts; capitalizing software acquisition costs; and depreciation expense.

22.    Because of its reasonable reliance upon the accounting advice that the Auditors had given to Global, CAMOFI believed that the representations that Global made to CAMOFI in the SPA were true and correct when made.

23.    Before and at the time that CAMOFI and Global entered into the SPA and the Note, CAMOFI reasonably believed as a fact that the Auditors would not change the position that they had taken on Global's accounting, upon which Global had reasonably relied in issuing its financial statements for the second quarter of 2005, including the accounting advice with respect to booking revenue due to Global under certain of its processing contracts, capitalizing software acquisition costs, and depreciation expense.

## MUTUAL MISTAKE OF FACT IS EXPOSED

24.    At the time that Global and CAMOFI entered into the SPA and the Note, they were both operating under the reasonable, but, as shown below, ultimately mistaken, belief that Global's outside auditors had provided Global with correct and proper accounting advice for purposes of the preparation of Global's quarterly and annual financial statements (including the position that the Auditors took with respect to booking revenue due to Global under certain of its

processing contracts; capitalizing software acquisition costs; and depreciation expense) and that the Auditors would not change such advice. Both Global and CAMOFI relied upon that mutual belief of fact in entering into the SPA and the Note.

25.    In or about February 2006 – less than four months after the SPA and the Note had been executed – the Auditors unexpectedly informed Global that the accounting advice that the Auditors had given to Global in connection with Global's financial statements for the quarter ending June 30, 2005 (which were contained in the Form 10-QSB that Global filed with the SEC on August 10, 2005), including the position that the Auditors had taken at that time with respect to booking revenue due to Global under certain of its processing contracts, capitalizing software acquisition costs, and depreciation expense, had been incorrect.

26.    Neither Global nor CAMOFI expected the Auditors to reverse course on the accounting treatment that they would require or permit with respect to Global's treatment of revenue due to Global under certain of its processing contracts, capitalizing software acquisition costs, and depreciation expense in its financial statements for the quarter ending June 30, 2005 (which were contained in the Form 10-QSB that Global filed with the SEC on August 10, 2005).

27.    The Auditors advised Global in or about February 2006 that if Global did not change its accounting treatment of the booking of revenue due to Global under certain of its processing contracts, capitalizing of software acquisition costs, and depreciation expense, and if Global did not file a Form 8-K with the SEC announcing that it had made such changes, the Auditors would withdraw from the engagement and refuse to render any required opinions with respect to Global's financial statements that would be contained in its Form 10-K.

28.    As a direct result of the change in the Auditors' accounting advice, Global filed a Form 8-K with the SEC on March 30, 2006, in which it disclosed that there had been

errors in the Form 10-QSB that it had filed with the SEC on August 10, 2005 for the quarter

ending June 30, 2005, specifically with respect to Global's treatment of certain of its processing

contracts, capitalizing software acquisition costs, and depreciation expense.

29.    The Form 8-K announced that Global was changing its accounting

treatment for the second quarter of 2005 with respect to booking revenue due to Global under

certain of its processing contracts, capitalizing software acquisition costs, and depreciation

expense.  Such changes had a negative impact on Global's financial condition and results for the

second quarter of 2005.

30.    Global subsequently filed an amended Form 10-QSB/A for the second

quarter of 2005 on May 26, 2006.

CLAIM FOR RELIEF – RESCISSION<br>DUE TO MUTUAL MISTAKE OF FACT

31.    Global incorporates the preceding paragraphs of its Counterclaim.

32.    Before they executed and entered into the transaction reflected by the SPA

and the Note, both Global and CAMOFI believed that the Auditors would not reverse course on

Global's accounting treatment for booking revenue due to Global under certain of its processing

contracts, capitalizing software acquisition costs, and depreciation expense.

33.    Before they executed and entered into the transaction reflected by the SPA

and the Note, Global and CAMOFI were mutually mistaken, as a matter of fact, in their mutual

belief that the Auditors would not reverse course on Global's accounting treatment for booking

revenue due to Global under certain of its processing contracts, capitalizing software acquisition

costs, and depreciation expense.

34.    Such mutual mistake on the part of Global and CAMOFI was material and

substantial, because neither Global nor CAMOFI would have entered into the transaction

reflected in the SPA and the Note if it had known that the Auditors would later take the position that Global had to revise the accounting treatment that it had utilized for booking revenue due to Global under certain of its processing contracts, capitalizing software acquisition costs, and depreciation expense in its financial statements for the second quarter of 2005.

35.    Because of such mutual mistake by Global and CAMOFI at the time they executed and entered into the transaction reflected by the SPA and the Note, the transaction itself, the SPA, and the Note should be rescinded, CAMOFI should return the warrants that it received as part of such transaction, and Global should return 100% of the principal amount of CAMOFI's investment to it within a reasonable time. In returning such principal amount, Global should not be restricted by the terms of the SPA and the Note that limit its ability to raise additional capital (see paragraph 7 of the Counterclaim).

WHEREFORE, counterclaim plaintiff Global Axcess Corp requests that judgment be entered on the Counterclaim in favor of Global Axcess Corp and against CAMOFI Master LDC, that the Court order that the Securities Purchase Agreement, the Note, and the transaction that they reflect are rescinded, that CAMOFI return the warrants that it received as part of the transaction, and that Global return 100% of the principal amount of CAMOFI's investment to it within a reasonable time (without being restricted by the terms of the SPA and the Note that limit its ability to raise additional capital), and, as a result of such rescission, that the Court also dismiss the Amended Complaint with prejudice, as the Amended Complaint is predicated upon the validity of the Securities Purchase Agreement and the Note. Global further requests that the

Court award it the costs of suit, including reasonable attorneys' fees, and grant such other and

further relief as this Court may deem appropriate.


Dated: New York, New York
       March 21, 2008

OF COUNSEL:                                      /s/ Kenneth J. King
                                                 Kenneth J. King (KK 3567)
M. Duncan Grant                                  Suzanne M. D'Amico (SD 3581)
Eric J. Goldberg                                 PEPPER HAMILTON LLP
PEPPER HAMILTON LLP                              The New York Times Building
3000 Two Logan Square                            620 Eighth Avenue, 37th Floor
Eighteenth and Arch Streets                      New York, NY  10018-1405
Philadelphia, PA  19103-2799                     (212) 808-2700
(215) 981-4000

Steven E. Brust                                  Attorneys for Defendant Global Axcess Corp
James H. Cummings
Smith, Gambrell & Russell, LLP
50 North Laura Street, Suite 2600
Jacksonville, FL  32202
(904) 598-6100

9420034