# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

CAMOFI MASTER LDC,

            Plaintiff,

- against -

GLOBAL AXCESS CORP.,

            Defendant.

Case No. 07 CIV 9317 (HB)

**AMENDED COMPLAINT**

Plaintiff CAMOFI Master LDC ("CAMOFI"), as and for its amended complaint in the above-entitled action, hereby alleges, on knowledge as to its own acts and otherwise upon information and belief, as follows:

1. This is an action to enforce the default provisions of a promissory note and recover the principal, interest and liquidated damages due thereunder.

## PARTIES

2. CAMOFI is a limited duration company organized under the laws of the Cayman Islands, with its principal place of business in the Cayman Islands.

3. Upon information and belief, Defendant Global Axcess Corp. ("Global") is a Nevada corporation with its principal place of business located at 224 Ponte Vedra Park Drive, Ponte Vedra Beach, Florida 32082.

## JURISDICTION AND VENUE

4. Pursuant to a series of agreements between the parties out of which the within lawsuit arises, each party submitted itself to the exclusive jurisdiction of the state and federal courts situated in the State of New York.

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because (a) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (b) the action is between a citizen of a State and a citizen or subject of a foreign State.

6. This District is a proper venue for this action pursuant to 28 U.S.C. §1391 in that Global has consented to venue in this District.

## FACTS COMMON TO ALL CLAIMS

7. On or about August 10, 2005, Global filed a Form 10-QSB with the Securities Exchange Commission ("SEC") for the quarterly period ended June 30, 2005 (the "2nd Quarter 10-QSB").

8. In addition, Global filed financial statements with the SEC for the 2nd quarter of 2005, upon which the financial disclosures made in the 2nd Quarter 10-QSB are based.

9. The 2nd Quarter 10-QSB stated, inter alia, that Global's revenue and net income for the 2nd quarter of 2005 was $5,437,811 and $295,911, respectively.

10. Prior to issuing the promissory note to CAMOFI which is the subject of this action, Global provided to CAMOFI, inter alia, (a) the 2nd Quarter 10-QSB, (b) the financial statements upon which the 2nd Quarter 10-QSB was based, and (c) further written statements restating the financial disclosures made therein and asserting that Global's gross profits and revenue for the 2nd quarter of 2005 exceeded gross profits and revenue for the same quarter in the previous year, that Global had a net income for the period and that the results exceeded Global's expectations.

11. On or about October 27, 2005, CAMOFI agreed to loan Global the principal sum of $3,500,000 as part of a convertible debt placement (the "Convertible Debt

2

Placement") with Global.

12.   The loan was made in accordance with the terms of a securities purchase agreement between CAMOFI and Global, dated as of October 27, 2005 (the "Securities Purchase Agreement"). A true and correct copy of the Securities Purchase Agreement is annexed hereto as Exhibit A.

13.   Simultaneous with and as part of the Convertible Debt Placement, and in consideration for Global's receipt of the sum of $3,500,000 from CAMOFI, Global executed a 9% senior subordinated secured convertible promissory note in favor of CAMOFI, which is due October 27, 2010 (the "Note"). A true and correct copy of the Note is annexed hereto as Exhibit B.

14.   On or about March 31, 2006, Global filed a Form 8-K (the "March '06 8K") with the SEC, in which it stated that its previously issued June 30, 2005 quarterly financial statements with respect to statements of operations and cash flows, contained "errors" which, when corrected, would result in a "material impact" on results of operations for such quarter. A true and correct copy of the March '06 8K is annexed hereto as Exhibit C.

15.   The March '06 8K disclosed, inter alia, that Global made errors in prior filings with the SEC (including the 2nd Quarter 10-QSB), with respect to (i) booking revenue due under certain of its processing contracts in the 2nd and 3rd quarters of 2005 instead of future quarters, (ii) failing to fully capitalize software-purchase costs in the 2nd and 3rd quarters of 2005 and to expense such costs in future periods; and (iii) taking a depreciation expense for assets in the 2nd and 3rd quarters of 2005 which should have been expensed in future periods.

3

16. The errors disclosed in the March '06 8K with respect to the 2nd quarter of 2005 resulted in a decrease in revenue and a change from a reported net gain to a reported net loss for such quarter.

17. Global thereafter filed an amended Form 10-QSB/A with the SEC with respect to the 2nd quarter of 2005 which reflected the downward revised revenue amount and the net loss figure.

## AS AND FOR THE FIRST CLAIM
### (Breach of Contract)

18. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 17 hereof as if fully set forth herein.

19. CAMOFI fully performed its obligations under both the Securities Purchase Agreement and the Note by paying to Global the sum of $3,500,000 which Global, in turn, accepted.

20. Pursuant to Paragraph 8(a)(iv) of the Note, an event of default includes any representation or warranty made therein, in any other "Transaction Document," in any written statement pursuant thereto, or in any other report, financial statement or certificate made or delivered to the Holder or any other holder of Global notes, which is untrue or incorrect in any material respect as of the date when made or deemed made.

21. The Securities Purchase Agreement is encompassed within the definition of "Transaction Document" as used under the Note.

22. In Paragraph 3.1(h) of the Securities Purchase Agreement, Global expressly represented and warranted that:

    a. those reports and financial statements which it filed with the SEC during the preceding two years ("SEC Reports") complied in all respects with the

   requirements of the Securities Act and the Exchange Act and the rules and regulations promulgated thereunder;

   b. when filed, none of the SEC Reports contained any untrue statement of material fact;

   c. the financial statements complied in all material respects with applicable accounting requirements and the rules and regulations of the SEC;

   d. the financial statements were prepared in accordance with GAAP; and

   e. the financial statements fairly presented in all material respects the financial position of Global and the results of operations and cash flows for the periods then ended.

23. In Paragraph 3.1(r) of the Securities Purchase Agreement, Global expressly represented and warranted that:

   a. as of the closing date, Global was in material compliance with all provisions of the Sarbanes-Oxley Act of 2002; and

   b. Global maintained a system of internal accounting controls sufficient to provide reasonable assurance that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain asset accountability.

24. In Paragraph 3.1(y) of the Securities Purchase Agreement, Global expressly represented and warranted that:

   a. Global understood that CAMOFI would rely on the representations made within the Securities Purchase Agreement in effecting the Convertible Debt Placement; and

    b. all disclosures provided to CAMOFI with respect to the representations and warranties made in the Securities Purchase Agreement were true and correct and did not contain any untrue statement of material fact.

25. When filed, Global's financial statements with respect to the 2nd quarter of 2005 and the 2nd Quarter 10-QSB contained untrue statements of material fact, in breach of Global's express representations and warranties made in Paragraph 3.1(h) of the Securities Purchase Agreement.

26. By reason of the errors contained in Global's financial statements with respect to the 2nd quarter of 2005 and in the 2nd Quarter 10-QSB, such financial statements and the 2nd Quarter 10-QSB filing were not in compliance with the requirements of the Securities Act and/or the Exchange Act and/or the rules and regulations promulgated thereunder, in further breach of Global's express representations and warranties made in Paragraph 3.1(h) of the Securities Purchase Agreement.

27. By reason of the errors contained in Global's financial statements with respect to the 2nd quarter of 2005 and in the 2nd Quarter 10-QSB, such statements and the 2nd Quarter 10-QSB filing did not comply in all material respects with applicable accounting requirements and the rules and regulations of the SEC, in further breach of Global's express representations and warranties made in Paragraph 3.1(h) of the Securities Purchase Agreement.

28. By reason of the errors contained in Global's financial statements with respect to the 2nd quarter of 2005, the financial statements were not prepared in accordance with GAAP, in further breach of Global's express representations and warranties made in Paragraph 3.1(h) of the Securities Purchase Agreement.

29. By reason of the errors contained in Global's financial statements with respect to the 2nd quarter of 2005, the financial statements did not fairly presented in all material respects the financial position of Global and the results of operations and cash flows for the period then ended, in further breach of Global's express representations and warranties made in Paragraph 3.1(h) of the Securities Purchase Agreement.

30. As evidenced by the errors contained in Global's financial statements with respect to the 2nd quarter of 2005 and in the 2nd Quarter 10-QSB, as of the closing date, Global was not in material compliance with all provisions of the Sarbanes-Oxley Act of 2002, in breach of Global's express representations and warranties made in Paragraph 3.1(r) of the Securities Purchase Agreement.

31. As evidenced by the errors contained in Global's financial statements with respect to the 2nd quarter of 2005 and in the 2nd Quarter 10-QSB, as of the closing date, Global did not maintain a system of internal accounting controls sufficient to provide reasonable assurance that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain asset accountability, in further breach of Global's express representations and warranties made in Paragraph 3.1(r) of the Securities Purchase Agreement.

32. Certain of Global's disclosures provided to CAMOFI with respect to the representations and warranties made in the Securities Purchase Agreement were untrue and incorrect and contained untrue statements of material fact (including, but not limited to Global's assertion that its gross profits and revenue for the 2nd quarter of 2005 exceeded gross profits and revenue for the same quarter in the previous year and that Global had a net income for that period), in breach of Global's express representations

and warranties made in Paragraph 3.1(y) of the Securities Purchase Agreement.

33. Every one of the previously alleged breaches by Global of an express representation and warranty made in the Securities Purchase Agreement constitutes a separate event of default under Paragraph 8(a)(iv) of the Note.

34. By reason of such defaults, CAMOFI has declared the Note in default and demanded payment of all sums due thereunder, including, but not limited to, the mandatory prepayment amount of 110% of the principal amount of the Note, plus all accrued and unpaid interest at a rate of 20% per annum, and any other amounts, costs, expenses and liquidated damages (including attorneys' fees) which may accrue.

35. By reason of the foregoing, CAMOFI has been caused to suffer damages in an amount to be determined at trial, but which is not less than $4,679,500.

WHEREFORE Plaintiff CAMOFI demands judgment against Global, together with costs and expenses, including attorneys' fees, of this action, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
      December 14, 2007

                           EATON & VAN WINKLE LLP

                           By: _____
                              Joseph T. Johnson (JJ 1907)

3 Park Avenue
New York, New York 10016
(212) 779-9910

Counsel for Plaintiff CAMOFI Master LDC